IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TANGELA COOPER ELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV493 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tangela Cooper Eller, seeks review of a final decision of the Commissioner of Social Security denying her claims for social security disability benefits. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits in October of 2010 alleging a disability onset date of October 10, 2009, later amended to June 1, 2009. (Tr. 17, 136-38.) The application was denied initially and again upon reconsideration. (*Id.* at 60-84.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 88-89.) At the February 7, 2013 hearing were Plaintiff, her attorney, and a vocational expert ("VE"). (*Id.* at 30-59.) On March 26, 2013, the ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 17-29.) On April 24, 2014 the Appeals Council denied

Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her amended onset date of June 1, 2009. (*Id.* at 19.) The ALJ next found that Plaintiff suffered from a single severe impairment, fibromyalgia. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one listed in

2

Appendix 1. (*Id.*) At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 23.) At step five, the ALJ determined that, given Plaintiff's age, education, work experience, and RFC, there were other jobs that Plaintiff could perform, such as mail clerk/sorter, office helper, and folder. (*Id.* at 24.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date (June 1, 2009) through the date of the decision (March 26, 2013.). (Tr. 24-25.)

Prior to step four, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 20-23.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work. (*Id.* at 20.) Specifically, the ALJ concluded that Plaintiff could perform light work (lifting and carrying twenty pounds occasionally and ten pounds frequently and standing, walking, and sitting six hours during an eight hour work day), except that she: (1) could only frequently handle and finger bilaterally, (2) could only occasionally climb, balance, stoop, crouch, kneel or crawl, (3) could have no concentrated exposure to hazards like moving machinery or unprotected heights, and (4) should be limited to unskilled activity. (*Id.*)

## IV. ANALYSIS

Plaintiff makes three arguments. First, Plaintiff contends that the ALJ failed to follow Social Security Ruling 12-2p in evaluating her severe fibromyalgia. (Docket Entry 10 at 3.) Second, she contends that substantial evidence does not support the ALJ's RFC finding. (*Id.*) Third, Plaintiff contends that the ALJ failed to present a proper hypothetical question to the

3

VE. (*Id.*) For the following reasons, the undersigned concludes that remand is in order.

### A. SSR 12-2p and Fibromyalgia

Plaintiff argues that the ALJ erred by failing to address fibromyalgia at every step of the process, particularly at step three. (Docket Entry 10 at 3.) She contends that though the ALJ found at step two that Plaintiff's fibromyalgia was severe, the ALJ never mentioned SSR 12-2p in his decision, nor evaluated Plaintiff in light of the Ruling. (*Id.*)

To evaluate this argument, an understanding of the nature of fibromyalgia, and of SSR 12-2p, is necessary. Regarding the former, the Fourth Circuit has explained:

> [f]ibromyalgia is a rheumatic disease with . . . symptoms[ ] including "significant pain and fatigue," tenderness, stiffness of joints, and disturbed sleep . . . . Doctors diagnose fibromyalgia based on tenderness of at least eleven of eighteen standard trigger points on the body. . . . "People with rheumatoid arthritis and other autoimmune diseases, such as lupus, are particularly likely to develop fibromyalgia." . . . Fibromyalgia "can interfere with a person's ability to carry on daily activities." . . . "Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not."

*Stup v. UNUM Life Ins. Co.*, 390 F.3d 301, 303 (4th Cir. 2004) (internal citations omitted) *abrogated on other grounds*, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). As for SSR 12-2p, its purpose is to provide "guidance on how [the Administration] develop[s] evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how [the Administration] evaluate[s] FM in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012).

4

## B. Step Three

When evaluating whether a claimant meets one or more of the listed impairments, the ALJ must identify the relevant listings and then compare each of the listed criteria to the evidence of the claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This requires an ALJ to compare the plaintiff's actual symptoms to the requirements of any relevant listed impairments in more than a summary way. *Id.* "The ALJ is required to give more than a mere conclusory analysis of the plaintiff's impairments pursuant to the regulatory listings." *Fraley v. Astrue*, No. 5:07CV141, 2009 WL 577261, at *25 (N.D.W.Va. Mar. 5, 2009) (citation omitted).

In SSR 12-2p, the Administration provided the following guidance as to how to consider fibromyalgia at step three of the sequential process:

> FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12–2p, 2012 WL 3104869, at *6.

Here, in his step three analysis, the ALJ wrote "The claimant does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments . . . . The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.06."[1] (Tr. 19.) After setting forth the criteria

---

[1] Listing 12.06, the listing for anxiety-related disorders, is met if an individual meets or medically equals the A and B, or the A and C, criteria. 20 C.F.R. Pt. 404, Subpart P., App'x 1 § 12.06(A)-(C). The A criteria are met when a claimant medically documents at least one of five symptoms. *Id.* The

5

for that listing—which requires that the ALJ rate Plaintiff's activities of daily living, social functioning; concentration persistence, or pace; and repeated episodes of decompensation—the ALJ conducted the following analysis:

> In activities of daily living, the claimant has mild restrictions as the claimant cares for her cats, vacuums, does laundry, watches television, and uses the computer to pay bills. In social functioning, the claimant has mild difficulties as she attends Bible study on Monday nights, grocery shops, and gets along with others. With regard to concentration, persistence or pace, the claimant has mild difficulties as the claimant stated that she could focus and concentrate. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one marked limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(Tr. 20.)

It is clear from the record that "the ALJ failed to discuss or even mention Plaintiff's fibromyalgia . . . at Step 3 in concluding that Plaintiff's impairments, singularly or in combination, failed to equal a listed impairment." *Kinsey v. Colvin*, No. 8:13–1723–BHH, 2014 WL 6090772, at *11 (D.S.C. Nov. 13, 2014); *see also Hook v. Commissioner of Social Sec.*, Civil

---

B criteria are met by having at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* The paragraph C criteria require the complete inability to function outside the area of one's home. *Id.*

6

Action No. 1:14CV126, 2015 WL 518645, at *14 (N.D.W.Va. Feb. 6, 2015); *Cashin v. Colvin*, No. 1:12CV909, 2013 WL 3791439, at *4-5 (N.D. Ohio July 18, 2013). The ALJ should have done so after determining that Plaintiff's fibromyalgia was a severe impairment at step two of the sequential evaluation. (Tr. at 19.)

Given the ALJ's failure to mention or discuss Plaintiff's fibromyalgia at step three of the sequential evaluation, the undersigned cannot conclude that the ALJ's determination that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Tr. at 19) is supported by substantial evidence. Nor can the undersigned find that such error is harmless "because the Social Security regulations state that if a person's impairments meet or equal a Listing, she is disabled under the regulations and would be entitled to benefits with no further analysis required." *Cashin*, 2013 WL 3791439, at *6.[2] Accordingly, the undersigned agrees that the matter should be remanded for discussion of Plaintiff's fibromyalgia at Step Three.

Defendant's arguments to the contrary are not persuasive. Defendant acknowledges that the ALJ did not mention SSR 12-2p at step three, nor anywhere else in his decision, but contends that he had no obligation to do so, so long as he fully complied with the requirements

---

[2] *See Hook*, 2015 WL 518645, at *14-15 (concluding that failure to mention the claimant's severe fibromyalgia at step three was not harmless error); *Lillard v. Comm'r, Soc. Sec.*, No. 13-cv-1458-JKB, 2014 WL 2004710, at *3 (D. Md. May 14, 2014) (remanding for further analysis of claimant's fibromyalgia because "it is not clear [the ALJ's] decision would have been the same had she employed the guidance of SSR 12-2p" and considering it "[s]ignificant[ ]" that "the ALJ only expressly considered Listing 12.04, which pertains to affective disorders, and she did not specifically evaluate any Listings for physical impairments"); *Vest v. Colvin*, No. 5:13CV00067, 2014 WL 4656207, at *27 (E.D. Va. Sept. 16, 2014) ("The mere fact that an ALJ properly found a claimant capable of past work at step four or of other work at step five does not render an error at step three harmless; otherwise, step three errors would never be reversible alone, which is clearly not the case.").

of that Rule. (Docket Entry 13 at 7.) The undersigned agrees that there is no *per se* rule requiring remand for an ALJ's failure to mention SSR 12-2p where fibromyalgia is found to be a severe impairment at step two. However, for reasons described throughout this Recommendation, it is far from clear that the ALJ was cognizant of, and adhered to, the dictates of SSR 12-2p.

Defendant also contends that the ALJ considered Plaintiff's fibromyalgia at step three. (Docket Entry 13 at 8-10.) Defendant concedes that the ALJ never mentioned fibromyalgia at step three, but reasons that the ALJ must have considered Plaintiff's fibromyalgia because it was the only severe impairment identified by the ALJ at step two. (*Id.* at 9.) Defendant further contends that the ALJ analyzed Listing 12.06 because of the alleged limitations Plaintiff suffered in her ability to concentrate and focus as a result of her fibromyalgia. (*Id.*) Assuming this is not an impermissible *post hoc* rationalization by the Commissioner,[3] Defendant's argument—at least at first glance—seems compelling. However, Plaintiff, by way of reply, has a compelling point as well. She suggests that by evaluating Listing 12.06 related to anxiety impairments at step three, the ALJ was simply tracking the 12.06 analysis conducted by the non-examining state agency physicians who were analyzing Plaintiff's non-severe anxiety disorder rather than Plaintiff's fibromyalgia. (Docket Entry 14 at 5 *referencing* Tr. 63-64, 72-74.) Ultimately this exchange heightens the concern of the undersigned that the ALJ failed to adequately explain his findings and reasoning at step three

---

[3] *Post hoc* agency rationalizations are not favored. *Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009) (concluding that "a court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say").

8

and may have also failed to consider a relatively new SSR ruling.[4] *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling."); *see also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (concluding that an ALJ is required to build a logical bridge between the evidence and his conclusions). Remand is justified on this ground alone, however, there are additional reasons, described below, further eroding the confidence of the undersigned that the ALJ's decision is supported by substantial evidence.

### C. RFC

The undersigned also has serious concerns about the ALJ's RFC determination. "[T]he nature of fibromyalgia means that a patient's ability to perform certain tasks or postural maneuvers on a given day does not necessarily reflect an ability to perform those tasks and maneuvers on a sustained basis." *Winkler v. Commissioner, Social Sec. Admin*, Civil No. SAG–14–2720, 2015 WL 4069334, 2015 WL 4069334, at *4 (D. Md. July 2, 2015). SSR 12–2p emphasizes that the ALJ "will consider a longitudinal record whenever possible because the symptoms of FM [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12–2p, 2012 WL 3104869, at *6.

Here, the ALJ failed to adequately evaluate the records of Plaintiff's treating physician, Dr. Elliot L. Semble, M.D.. Plaintiff met close to fifty times over a multi-year period with Dr. Semble, at Salem Rheumatology, P.A., in Winston Salem, North Carolina, where she was

---

[4] Defendant further contends that Plaintiff cannot demonstrate any meaningful step three error because she has failed to articulate a specific listing that she contends she equals. (Docket Entry 13 at 8.) This line of thinking erroneously presumes that the ALJ's decision at step three is susceptible to substantial evidence review in the first instance and that there are not other material errors in the decision warranting remand.

9

treated for her fibromyalgia. (Tr. 241-274, 280-83, 292-299, 303-322, 330-55.) The ALJ only mentioned two specific appointments in his decision, August 20, 2010 and July 26, 2010, and even then only noted that at the former her "pain was severe and that she had difficulties performing her activities of daily living" and at the latter she "experienced morning stiffness" but "was doing yoga," "was independent in her activities of daily living," without "joint swelling, muscle soreness," or "joint instability," and "there was a functional range of motion in all joints," but "[t]here were tender points noted in a typical fibromyalgia distribution." (Tr. 22 *referencing* 261-63.) The ALJ also noted generally that "[s]ubsequent medical records" from Salem Rheumatology "revealed that the claimant experienced diffuse musculoskeletal pain, due to cold weather," that she was "prescribed Percocet for pain," and that she "continued to experience tender points in a fibromyalgia distribution." (Tr. 22 *referencing* 292-299.) However, the "subsequent medical records" to which the ALJ points reference only four meetings with Dr. Semble. (*Id.*) Also, the ALJ ultimately gave "no weight" to Dr. Semble's questionnaire concluding that Plaintiff had tender points for at least twelve months, musculoskeletal pain, that she could sit and stand for less than two hours in an eight hour day, and that she could rarely lift and carry less than ten pounds. (Tr. 23 *referencing* 324-29.) This description of Plaintiff's nearly fifty visits with Dr. Semble is not sufficient to permit review.

The conclusion that this analysis inadequately evaluated the record, thereby prohibiting substantial evidence review, is further informed by a recent case decided in this Court, *Dowell v. Colvin*, No. 1:12CV1006, 2015 WL 1524767 (M.D.N.C. April 2, 2015). In that case, like this one, the claimant's fibromyalgia was found at step two to be severe. *Id.* at 2. The Court

10

determined that a remand was in order, in part, because the Court could not discern whether the ALJ took into consideration the claimant's fibromyalgia related symptoms in arriving at the RFC. *Id.* at 4. In pertinent part, the Court reasoned that:

> [W]hile the ALJ does not have to discuss every piece of evidence, the ALJ cannot cherry-pick the evidence that supports his decision to the exclusion of evidence favorable to the claimant. *See Czerska v. Colvin*, No. TMD 12–2238, 2013 WL 5335406, at *4 (D. Md. Sept. 20, 2013). This is particularly troubling in cases of fibromyalgia where the symptoms are subjective in nature. . . . Ms. Dowell began treatment with Dr. Semble, a rheumatologist, in September of 2008. ([Tr.] at 350 .) While the ALJ noted that Ms. Dowell's pain level from her October 2008 visit with Dr. Semble was a 5/10 (*id.* at 14), he failed to discuss that Ms. Dowell consistently reported pain to Dr. Semble over more than ten visits from 2008–2010. (*Id.* at 336–51, 398–417.) During these visits her pain level continued to increase, frequently reaching a level of 9/10 and 10/10. (*Id.*) Further, Dr. Semble's records noted that Ms. Dowell was "severely restricted in physical and social activities" due to her pain. (*See, e.g.*, Tr. at 336, 338, 342, 344, 415, 413, 411.) Because Dr. Semble was a treating specialist, the ALJ should have provided thorough analysis of his treatment and assessment of Ms. Dowell's fibromyalgia and related symptoms in his RFC analysis. [*Loving v. Astrue*, No. 3:11–CV–411–HEH, 2012 WL 4329283, at *5 (E.D.Va. Sept. 20, 2012).] ("When evaluating the presence and impact of fibromyalgia, . . . deference to the treating specialist is critical due to the unique problems in evaluating its impact on the patient" and "because in person assessments . . . represent the best means of assessing the patient's information.").

*Dowell*, 2015 WL 1524767, at *4.

The undersigned concludes that the error committed by the ALJ in this case is nearly identical to the error requiring remand in *Dowell*. In fact, both cases involve the ALJ's failure to analyze the longitudinal record and build a logical bridge between the factual determinations and the legal conclusions so that the administrative decision is susceptible to further review.

11

Moreover, both cases involve an ALJ's failure to sufficiently evaluate a claimant's relationship with her treating physician, Dr. Semble in both cases. Like *Dowell*, this case also involves an ALJ's failure to acknowledge multiple visits of a pain level of 10/10 (*see, e.g.*, Tr. 241, 265, 273, 292, 294, 296, 315, 330, 332, 334, 338, 340, 342, 344, 346) and findings by a treating physician that the claimant was severely restricted in physical and social activities due to pain (*see, e.g.*, Tr. 241, 273, 280, 282, 296, 298). Importantly, the case for remand may actually be stronger in this case because SSR 12–2p was available to the ALJ in this case, but not to the ALJ in *Dowell*. Thus, the ALJ in this case should have been aware that symptoms of fibromyalgia may wax and wane, that a person suffering from fibromyalgia may be able to do activities on one day that he or she could not do on another day, and that given the nature of fibromyalgia, an evaluation of the longitudinal record is in order. Consequently, for the same reasons describe in *Dowell*—and because there appears to be considerable reason to doubt whether the ALJ applied SSR 12-2p here—the Court recommends remand as the proper course in this case.

### D. Credibility

The undersigned also has a serious concern about Plaintiff's credibility analysis. The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and

404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (unpublished) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)). "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p. Similarly, in determining the credibility of a claimant, SSR 96–7p, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p. An ALJ's credibility finding is entitled to "substantial deference." *Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished).

The undersigned concludes that part of the ALJ's credibility analysis in this case is built upon an erroneous—or at least unduly speculative—assumption. This is because the ALJ stated no fewer than four times that Plaintiff testified or reported that she cared for a mentally

13

handicapped adult sibling. (Tr. 21-23.) However, Plaintiff did not so testify, but rather testified that she lives in a house with her husband—who is currently unemployed—and a mentally handicapped brother who has the "brain of a two-year old." (*Id.* at 36-37.) Plaintiff never testified that she cared for her sibling. Defendant contends that it "was entirely logical for the ALJ to assume that Plaintiff provided some care for him" given that they lived together and that the sibling was in Plaintiff's custody. (Docket Entry 13 at 14-15.) It is entirely possible that Plaintiff provides "some care" for her brother, although the record does not demonstrate what type of care this may be. On other hand, it is also entirely possible that Plaintiff's unemployed husband aids her brother, or perhaps that this brother receives some other form of aid. The point here is that evidence of any of these three possibilities—or some combination of the same—is not apparent and, therefore, cannot provide substantial evidence for this portion of the ALJ's credibility analysis. Defendant contends that if this was error, it was harmless, given the other activities of daily living that Plaintiff could perform. (Docket Entry 13 at 14-15, n.1.) The undersigned is not as confident as Defendant that this is the case, especially given the considerable emphasis the ALJ placed on Plaintiff's alleged care for her brother in his decision and the other errors described herein. Consequently, the undersigned recommends remand as the better course here for this additional reason.

## V. CONCLUSION

None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, in light of all of the above, the undersigned concludes that the proper course here is to remand this matter for further

14

administrative proceedings.  Finally, the undersigned declines consideration of the additional issues raise by Plaintiff at this time.  *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision as no preclusive effect, as it is vacated and the new hearing is conducted de novo).

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  **IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g).  To this extent, the undersigned **RECOMMENDS** that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **DENIED**, and that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be **GRANTED**.  To the extent that Plaintiff's motion seeks an immediate award of benefits, the undersigned **RECOMMENDS** that it be **DENIED**.

This 22nd day of July, 2015.

Joe L. Webster
United States Magistrate Judge

15

Case 1:14-cv-00493-LCB-JLW   Document 15   Filed 07/22/15   Page 15 of 15